IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) Case No. 6:21-CR-1 |
| v. | ) |
| | ) |
| MAGGIE LEE SMITH | ) |
|     also known as "Missy" | ) |
| | ) |

**UNITED STATES' PROFFER OF FACTS IN SUPPORT OF GUILTY PLEA**

This proffer of facts summarizes the facts and circumstances surrounding the criminal conduct of the defendant MAGGIE LEE SMITH (herein, "SMITH"), as it relates to Counts One, Four, and Five of the Fourth Superseding Indictment.[1] Had this case proceeded to trial on these counts, the United States would have proven these facts beyond a reasonable doubt. This proffer of facts does not necessarily contain all of the information obtained during this investigation and applicable to an accurate Presentence Report and Sentencing Guidelines calculation.

1.     Beginning in at least January 2016 and continuing through July 2021, in the Western District of Virginia and elsewhere, SMITH knowingly and intentionally conspired with others known and unknown, to distribute and to possess with the intent to distribute cocaine, a Schedule II controlled substance. Further, the amount involved in the conspiracy attributable to

---

[1] Defendant SMITH is also charged in Counts Three, Twenty-Two, and Twenty-Three of the Fourth Superseding Indictment. She had advised the Court that she is not entering a plea of guilty to Counts Three, Twenty-Two, and Twenty-Three and intends to proceed to trial on those Three charges.

1

SMITH as a result of her own conduct, and the conduct of other co-conspirators reasonably foreseeable to her, was 500 grams or more of a mixture or substance containing a detectable amount of cocaine.

### Controlled Purchase from SMITH on February 11, 2020

2.      On February 11, 2020, law enforcement conducted a controlled purchase of cocaine from SMITH. Specifically, a confidential informant ("CI") working under the supervision of law enforcement placed a recorded call to SMITH. During the phone conversation, SMITH agreed to sell the CI $60 worth of cocaine and SMITH instructed the CI to meet SMITH at SMITH's 1608 Florida Avenue, Lynchburg, Virginia residence. Upon the CI's arrival at SMITH's residence, SMITH answered the door and the two entered the kitchen area. Present in the kitchen was a four to five year old child. SMITH opened a cabinet and retrieved a Ziplock bag containing cocaine. SMITH took a small amount of the cocaine out of the bag and packaged it in smaller plastic bag. SMITH then weighed the contents and gave them to the CI in exchange for $60. The CI observed another bag of white powder substance laying on the kitchen counter approximately the size of a golf ball. The purchased substance was subsequently sent to the Virginia Department of Forensic Science for chemical analysis. Pursuant to a Certificate of Analysis dated April 30, 2020, the lab reported the substance to be .6016 grams of cocaine.

### February 14, 2020 Search Warrant

3.      On February 14, 2020, law enforcement executed a search warrant at SMITH's Florida Avenue, Lynchburg, Virginia residence. At the time of the execution of the search warrant SMITH was the only one present. During the search law enforcement recovered the

following items:

    a. Item #2: $4,821.00 in U.S. Currency, some of which had been located in a jacket along with Item #1 above and SMITH's identification card. Included in the sum were: 3-$100 bills, 27-$50 bills, 145-$20 bills, 9-$10 bills 22-$5 bills and 71-$1 bills; and

    b. Item # 9: Digital scale.

4. Law enforcement also found the following items which were sent to the Virginia Department of Forensic Science and determined on May 1, 2020 to be the following:

    a. Item #1: .3333 grams of cocaine, a Scheduled II Controlled Substance;

    b. Item #5: 1.32 grams of cocaine, a Scheduled II Controlled Substance;

    c. Item #6: .2403 grams of heroin, a Scheduled I Controlled Substance;

    d. Item #10: .5261 grams of cocaine, a Scheduled II Controlled Substance;

    e. Item #12: .7863 grams of heroin, a Scheduled II Controlled Substance;

    f. Item #13: 19.59 grams of cocaine, a Scheduled II Controlled Substance;

    g. Item #14: 1.42 grams of cocaine, a Scheduled II Controlled Substance; and

    h. Item #15: .8191 grams of cocaine, a Scheduled II Controlled Substance.

5. These amounts of cocaine were inconsistent with personal use and demonstrated the intent to distribute. Accordingly, SMITH knowingly and intentionally possessed with the intent to distribute cocaine, a Schedule II controlled substance.

6. After execution of the Search Warrant, law enforcement transported SMITH to the police department to be interviewed. After being advised of her rights pursuant to *Miranda*,

SMITH indicated she understood her rights and was willing to be speak with the agents. At this time SMITH acknowledged that she had been selling cocaine, that the cocaine in the house was hers, and that she was buying about an ounce a week of cocaine for $1,250 from a source of supply and then would break down the substance into smaller packages for resale. She acknowledged cooking some of the cocaine into crack cocaine, depending on the demands of her clientele.

7. During the same interview, SMITH acknowledged that she had been romantically involved with co-defendant Donnell Miller off and on for the four years prior to the interview. SMITH knew Miller to be involved in the trafficking of cocaine and that Miller's primary supplier was co-defendant Jermel Storey. SMITH indicated that Miller would take one to two trips per month out of town to meet with Storey to purchase large quantities, which she described as "bricks" of cocaine. SMITH admitted to having been involved in three to five of these trips and that she had observed the large, sealed bags of cocaine herself. On one such trip in November 2019, SMITH and Miller traveled to Charlotte, N.C. to get "a brick of cocaine from Storey." SMITH remembered this trip because it was just after Miller's birthday. On another trip in December 2019, SMITH and Miller drove to North Carolina from Lynchburg, Virginia and returned the following day with a large bag of cocaine which SMITH did not believe was a "full brick" because it had been "broken." A "brick" is street slang for a kilogram.

### November 22, 2020 Traffic Stop

8. Law enforcement obtained a federal search warrant for the geo-location of co-defendant Storey's phone in November 2020. Law enforcement also obtained a federal search

4

warrant for the geo-location of co-defendant Miller's phone.

9. On November 22, 2020, Miller's geo-location information indicated he was traveling from Lynchburg, Virginia to Charlotte, NC. The geo-location had Miller at the parking lot of a Harris Teeter in Charlotte, NC. STOREY's geo-location data showed Storey traveling from his residence to the same parking lot.

10. The geo-location information then showed Miller's phone traveling from Charlotte, NC to Greensboro, NC and then into Virginia in Pittsylvania County, within the Western District of Virginia.

11. In Pittsylvania County, the Virginia State Police initiated a lawful traffic stop on a vehicle occupied by SMITH and co-defendant Miller. SMITH was driving the vehicle that was registered to her, Miller was a front seat passenger, and there were two children in the backseat.

12. Located in the vehicle was a plastic grocery bag which contained a vacuumed sealed bag which contained a compressed white powder substances. A further search of the grocery bag yielded several articles of mail addressed to "Maggie Smith, 1608 Florida Avenue, Lynchburg, VA 24501" and one to "Donnell Lamont Miller, 508 Chamber St., Lynchburg, VA 24501." The white powder substance was later tested by the DEA laboratory and determined to be 500.2 grams of cocaine. Located in the center console of the vehicle was another vacuum sealed bag containing a compressed white powder substance. This substance was later tested by the DEA Laboratory and determined to be 502 grams of cocaine. These amounts of cocaine were inconsistent with personal use and demonstrated the intent to distribute.

13. Immediately following the stop SMITH was interviewed by law enforcement.

Prior to the interview SMITH was advised of her rights pursuant to *Miranda* and agreed to be speak to the agents. During this interview, SMITH admitted:

    a. The vehicle in which they were driving belonged to her;

    b. That she had recently gone through four different phones at the request of co-defendant Miller and that Miller changed his approximately every week;

    c. That SMITH and Miller had traveled to Charlotte, Fayetteville, and Greensboro, NC earlier that day and that she believed Miller had obtained the cocaine from at individual "at the mall" in Greensboro. When asked why a bag of cocaine was found in her purse, and another bag under SMITH's wallet in the center console, Smith responded, "I don't know;"

    d. That SMITH had driven Miller to North Carolina as recently as a month prior for the "purpose of getting done;" and

    e. That the small bag of white powder located on the driver side floorboard was oxycodone.

14. Accordingly, SMITH knowingly and intentionally possessed with the intent to distribute 500 grams or more of cocaine, a Schedule II controlled substance.

15. The actions taken by MAGGIE LEE SMITH as described above were taken willfully, knowingly, and with the specific intent to violate the law. SMITH did not take those actions by accident, mistake, or with the belief that they did not violate the law.

                                      Respectfully submitted,

                                      CHRISTOPHER R. KAVANAUGH
                                      United States Attorney

                                                      s/Ronald M. Huber
Ronald M. Huber, VA State Bar No. 31135
Sean M. Welsh, VA State Bar No. 89660
Assistant United States Attorneys

United States Attorney's Office
255 West Main Street, Room 130
Charlottesville, VA 22902
Tel:   434.293.4283
Ron.Huber@usdoj.gov